DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Richard Murphy, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In 2005, police began investigating allegations of sexual abuse related to thirteen-year-old M.A. The investigation began when M.A.'s mother discovered an unsent letter in which M.A. confided that she had been sexually abused by Murphy when she was between the ages of eight and eleven years. Murphy had frequently watched M.A. and her younger sister after school and *Page 2 
overnight on weekends during that period of time because M.A.'s mother was out of town for her work.
 {¶ 3} On May 22, 2006, Murphy was indicted on the following charges: (1) rape involving sexual conduct with a minor under the age of thirteen, a violation of R.C. 2907.02(A)(1)(b); (2) gross sexual imposition involving contact with a minor under the age of thirteen, a violation of R.C. 2907.05(A)(4); (3) pandering obscenity involving a minor, a violation of R.C. 2907.321(A)(1); and (4) illegal use of a minor in nudity-oriented material or performance, a violation of R.C.2907.323(A)(1). In the initial action against Murphy, he pled not guilty to the charges. Prior to the first trial in this matter, the trial court dismissed the charge of pandering obscenity involving a minor, and the matter proceeded to a jury trial on August 24, 2006. The trial court, however, declared a mistrial during the State's presentation of evidence, and a second trial commenced.
 {¶ 4} During the second trial, the jury could not reach a verdict on the rape charge, and the trial court declared a mistrial with respect to that charge. Murphy, however, was found guilty of the remaining charges of gross sexual imposition and use of a minor in nudity-oriented material or performance. On October 3, 2006, the trial court sentenced him to seven years incarceration and declared him a sexually oriented offender. Murphy timely appealed his convictions, and this Court affirmed those convictions. See State v. Murphy, 9th Dist. No. 23467,2007-Ohio-4532. *Page 3 
 {¶ 5} On May 8, 2007, a third jury trial commenced on the sole remaining charge of rape. On May 11, 2007, a jury found Murphy guilty of rape. On May 21, 2007, the trial court sentenced him to life in prison with the possibility of parole after ten years. Murphy timely appealed his conviction, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT MURPHY'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIM.R. 29."
 ASSIGNMENT OF ERROR II "DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his first and second assignments of error, Murphy asserts that his conviction was against the weight of the evidence and that insufficient evidence was introduced to support that conviction. We disagree.
 {¶ 7} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), *Page 4 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Murphy's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340. *Page 5 
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 9} Murphy was convicted of rape in violation of R.C.2907.02(A)(1)(b), which provides as follows:
 "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
Sexual conduct is defined as:
 "[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 10} In support of his argument, Murphy argues that the victim's testimony lacked credibility and that no physical evidence supported her claims of rape. This Court disagrees. *Page 6 
 {¶ 11} Initially, we note that "a rape victim's testimony need not be corroborated by physical evidence in order to sustain a conviction."State v. Arias, 9th Dist. No. 04CA008428, 2004-Ohio-4443, at ¶ 32. Moreover, in this matter, Donna Abbott, an experienced nurse practitioner employed by Akron Children's Hospital, testified that she would not expect to find physical evidence in a case such as this one. Abbott interviewed M.A. on November 11, 2005. In her testimony, Abbott indicated that it was not uncommon for children to report a rape several years after it occurred, as M.A. did. Abbott stated that under those circumstances it is unlikely that physical evidence or injury will be presented. Specifically, Abbott testified that injuries to the vaginal tissue often heal "beyond recognition" within seventy-two hours of the injury. Consequently, this Court finds no merit in Murphy's assertions that the lack of physical evidence requires reversal of his conviction.
 {¶ 12} The State relied predominantly on the testimony of M.A. and Sergeant Kenneth Butler. M.A. provided a detailed account of the allegations of abuse. In addition, Butler described the interview he conducted with Murphy prior to his arrest.
 {¶ 13} M.A. testified as follows. She met Murphy when she was very young, roughly six-years old. At that time, M.A.'s mother was a long-distance truck driver and was often gone during the school week. Murphy and his wife watched M.A. and her younger sister during this time period. Murphy would help *Page 7 
the girls get to school on time, feed them breakfast, and watch them after school. M.A. noticed odd behavior soon after Murphy began babysitting her. Murphy would insist that the girls change their clothes because they were too revealing. Later, Murphy required the girls to kiss him on the cheek before they left for school. "After a while, from that, Mr. Murphy would have me kiss him on the lips." During that time period when M.A. was approximately eight years old, Murphy also began to touch M.A. on her "chest and between [her] legs." M.A. also testified that Murphy digitally penetrated her on numerous occasions.
 {¶ 14} M.A. continued her testimony as follows. Murphy's actions continued to escalate. Murphy began coming into M.A.'s bedroom while she slept at his home. When asked if the same thing occurred each night, M.A. responded as follows:
 "Not exactly. Like he did rape me every time but not exactly the same thing happened."
M.A. testified that Murphy would climb on top of her in the bed, place a pillow over her head, and then have vaginal intercourse with her. Murphy would tell her to be quiet "or he would do it to [M.A.'s] little sister."
 {¶ 15} On cross-examination, Murphy attempted to attack M.A.'s credibility. Murphy's counsel asserted that M.A.'s version of events was not consistent. Specifically, Murphy's counsel noted that M.A. told one individual that Murphy placed a pillow over head while telling another that he placed a hand over her mouth. M.A. responded to these alleged inconsistencies by reiterating *Page 8 
that she was always raped, but that Murphy's conduct was not the same on each night.
 {¶ 16} In addition to M.A.'s testimony, the State presented the testimony of Sergeant Kenneth Butler of the Akron Police Department. Butler testified as follows. He interviewed Murphy on April 24, 2006. During that interview, Murphy admitted to digitally penetrating M.A., but denied allegations that the two engaged in intercourse. Throughout the interview, Murphy asserted that M.A. rubbed up against him and tried to initiate sexual contact. At the conclusion of the interview, Butler asked if Murphy would be willing to write M.A. a letter of apology. Murphy agreed and wrote out a ten page letter. In that letter, Murphy wrote as follows:
 "Fondeling you, putting the tip of my finger into you and seeing you with no clothes on, taking your picture was wrong[.]" (Sic.)
 {¶ 17} Based upon the above testimony, we cannot say that the jury lost its way when it convicted Murphy of rape. M.A. was consistent throughout numerous interviews and during her trial testimony. She recounted with great detail the nearly two full years in which she was raped on a weekly basis. During cross-examination, she maintained her testimony that Murphy had repeatedly violated her. In addition, Murphy admitted to Sergeant Butler that he had digitally penetrated M.A, an act sufficient to constitute rape. Consequently, we cannot say that Murphy's conviction was against the manifest weight of the evidence. *Page 9 
 {¶ 18} Having disposed of Murphy's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Murphy's first and second assignments of error lack merit.
 III. {¶ 19} Murphy's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 10 
Costs taxed to Appellant.
 CARR, P. J., DICKINSON, J., CONCUR. *Page 1